IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. PD-0513-05






TINA MARIE WRIGHT, a/k/a TINA MARIE NAGEL, Appellant


v.


THE STATE OF TEXAS





ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

FROM THE ELEVENTH COURT OF APPEALS

TAYLOR COUNTY






Holcomb, J., filed a dissenting opinion.



 I respectfully dissent. I would hold that the evidence adduced at appellant's trial was legally
insufficient to support her conviction. 

 As the majority opinion explains, a jury found appellant guilty of the first-degree-felony
offense of possession of methamphetamine in the amount of 200 grams or more but less than 400
grams, even though the evidence adduced at her trial showed that she had actually possessed less
than one gram of methamphetamine, with most of that tiny amount having been dissolved in several
hundred grams of toxic liquid. This Court, citing its decision in Seals v. State, 187 S.W.3d 417
(Tex.Crim.App. 2005), now affirms appellant's conviction on the theory that "it is not absurd [to]
define adulterant and dilutant as including . . . byproducts necessary to the manufacturing process." 
 I am persuaded that, with our decision in Seals and, now, our decision in this case, we are
wandering far afield from what the Legislature had in mind in terms of punishing drug offenders. 
I continue to think that the dissent in Seals got it right:

 Chapter 481 of the Texas Health and Safety Code sets out the Texas
Controlled Substances Act. This act provides higher penalties and longer sentences
for those who manufacture, distribute, or possess a larger quantity of drugs. The
gravamen of the offense is the quantity of the usable drug, not its purity. The federal
Anti-Drug Abuse Act and the pertinent sentencing guidelines are structured in a
similar manner. As the [United States] Supreme Court noted, "Congress adopted a
'market-oriented' approach to punishing drug trafficking, under which the total
quantity of what is distributed, rather than the pure drug involved, is used to
determine the length of the sentences."

 Under the market approach, the penalties for drug trafficking are "graduated
according to the weight of the drugs in whatever form they [are] found - cut or uncut,
pure or impure, ready for wholesale or ready for distribution at the retail level." The
Supreme Court explained that "Congress clearly intended the dilutant, cutting agent,
or carrier medium to be included in the weight of those drugs for sentencing
purposes. Inactive ingredients are combined with pure heroin or cocaine, and the
mixture is then sold to consumers as a heavily diluted form of the drug."

 The Texas Legislature, like Congress, was concerned with consumable drug
mixtures, mixtures that will or have reached citizens on the streets. Thus, the entire
weight of drug mixtures which are usable in the chain of distribution are considered
in determining the offense level. How do we know that the Texas Legislature has
implemented a market-based approach toward drug crimes? We look at the plain
language of the statute. The weight of a drug consists of: (1) the controlled substance
itself; and (2) any adulterants or dilutants. Adulterants and dilutants are any material
"that increases the bulk or quantity of a controlled substance." If, in fact, the
Legislature did not care whether a substance had the effect of increasing the
wholesale or retail bulk of the drug, it would not have added this requirement. It
would simply have said that the weight of a drug consists of (1) the controlled
substance itself; and (2) any material with which the drug is mixed or in which the
drug is found, which would inevitably include even the wrapping material, the waste
product, and any toxic remains. There must have been a reason why the Legislature
used language that the material must be one that increases the bulk of the drug itself. 
The clear reason is that Legislature wanted to punish drug traffickers and users based
upon the weight of the usable or salable product.

* * *


 It would be irrational . . . to consider unusable, unmarketable, toxic, or waste
material as an adulterant or dilutant that increases the bulk of the controlled
substance. By definition, the waste product is what is left over after the drug has
been manufactured, delivered, or consumed. It is function, not form, that counts. An
adulterant or dilutant functions as an aid to drug distribution or use, not as a
dangerous deterrent to a drug's consumption.


Seals v. State, 187 S.W.3d at 423-426 (Cochran, J., dissenting) (emphasis in original; footnotes and
citations omitted).

 I respectfully dissent.


FILED: SEPTEMBER 20, 2006

PUBLISH